**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AUDREY SWANN**<br><br>  Plaintiff,<br><br>  v.<br><br>**OFFICE OF THE ARCHITECT OF THE CAPITOL,**<br><br>  Defendant. | Case No. 1:12-cv-01320 (CRC) |

**MEMORANDUM OPINION**

Plaintiff Audrey Swann's career as an electrician in the House Office Buildings was short-circuited in 2012 when she was terminated by her employer—the Office of the Architect of the Capitol ("OAC")—based on an Inspector General report that concluded she had falsified her employment application. Swann responded with two lawsuits against the OAC for gender discrimination and retaliation. In this, the first of the two, she alleges that the OAC discriminated and retaliated against her for having filed two *prior* discrimination suits against it.[1] The OAC has moved to dismiss Swann's Complaint, or, in the alternative, for summary judgment. While sparks certainly flew during Swann's tenure at the OAC, the Court discerns little fire in her allegations. It therefore will dismiss or grant summary judgment for the OAC on all 22 counts of the Complaint.

**I.   Background**

This marks Swann's third lawsuit against the OAC. In the first, 09-cv-1568 ("Swann I"), she alleged that the OAC discriminated based on her gender by denying her a promotion, unfairly applying work rules, and failing to provide her separate female locker room facilities in

---

[1] In the second suit before the Court, 13-cv-1076 (CRC) ("Swann IV"), Swann alleges that the OIG investigation and her resulting termination were discriminatory and retaliatory.

the electrical shop of the House Office Buildings ("HOB"). In the second, 11-cv-0419 ("Swann II"), she alleged that the OAC discriminated and retaliated against her after she had a confrontation with a supervisor. The court granted summary judgment in favor of the OAC in both cases, which are now on appeal.

After Swann II was filed, the OAC's Office of Inspector General ("OIG") received an anonymous letter alleging that Swann had falsified her qualifications when she originally applied for her position in 2006. Swann IV Compl. ¶ 16. The OIG initiated an investigation and in March 2012 issued a report corroborating the allegations. The OAC terminated Swann on the basis of the OIG's findings. Id. ¶¶ 30–32. Swann now brings 22 separate counts of gender discrimination or retaliation based on the following seven alleged workplace incidents or policies:

- First, Swann alleges that during her interview in the OIG investigation, the investigator showed her a photograph of herself wearing a bathing suit (Count 1);

- Second, Swann claims that during his deposition in Swann I and Swann II, the Superintendent of the OAC "threatened" her by stating that she would be discharged based on the findings of the OIG's interim investigation (Count 2);

- Third, she alleges that certain of her male colleagues made sexually-related comments in her presence despite being admonished not to do so by OAC management (Counts 5, 11, and 17);

- Fourth, she claims that she was not given the opportunity to work overtime during the biennial Congressional changeover in the winter of 2010-2011 (Counts 7, 13, and 19);

- Fifth, echoing an allegation in Swann I, she contends that the OAC declined her request to build a separate female locker room when it remodeled the House electrical division in November 2011 (Counts 6, 12, and 18);

- Sixth, she maintains that the OAC stopped giving her the benefit of a 7 1/2 minute grace period in determining whether she arrived late for work (Counts 8, 14, and 20); and

- Seventh, she asserts that an OAC policy requiring employees to wear civilian clothes while decorating the House and Capitol Office Buildings for the holidays was applied to her but not to her male colleagues (Counts 9, 15, and 21).

Swann also contends that, taken together, these alleged incidents created a hostile work environment for her as a woman (Counts 3, 4, 10, 16, and 22).

The OAC moves to dismiss a number of these counts under Federal Rule of Civil Procedure 12(b), arguing either that the alleged conduct does not constitute an "adverse employment action" under Title VII and the Congressional Accountability Act ("CAA"), or that the count otherwise fails to state a valid claim as a matter of law. It seeks summary judgment on the remaining counts, arguing that the allegations, assessed in light of declarations and other evidence submitted by the OAC, do not give rise to a reasonable inference that the OAC discriminated or retaliated against Swann. No discovery has taken place in this case. The Court held a hearing on this motion and OAC's analogous motion in Swann IV on August 4, 2014.

## II.     Legal Standards

### A.     Standards of Review

The OAC's motion to dismiss must be granted if the allegations in Swann's Complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In order to survive the motion to dismiss, Swann must have alleged facts that would establish the defendant's liability. See Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Although the Court must accept the facts pled as true, legal allegations devoid of factual support are not entitled to this assumption. See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

The Court will grant the OAC's alternative motion for summary judgment if the OAC has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a

matter of law.  See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court must draw all reasonable inferences in Swann's favor, accept all competent evidence presented by her as true, and may not make credibility determinations, weigh evidence, or draw inferences from the facts.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005).  The existence of a factual dispute, however, will not defeat a motion for summary judgment if the dispute, when resolved, would not materially influence a reasonable jury evaluating the elements of the case under the governing law.  Anderson, 477 U.S. at 248; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000) ("[T]here will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.").

B.  Statutory Standards

At the outset, Swann urges the Court to apply what she views as broader legal standards for discrimination and retaliation under the CAA, rather than the standards of Title VII.  The Court declines this invitation; it will follow the well-worn path in this court and apply Title VII case law to Swann's CAA claims.[2]  To make out a plausible claim of discrimination under Title VII, Swann must allege that she has suffered an adverse employment action because of race, color, religion, sex, or national origin.  See 2 U.S.C. § 1311(a); Brady v. Office of Sergeant at

---

[2] Swann cites no case to support this position and it is contrary to numerous decisions of this court.  Indeed, "[c]ourts have consistently relied on judicial interpretations of Title VII when addressing the substance of employment discrimination, hostile work environment, and retaliation claims under brought under the CAA." Newton v. Office of the Architect of the Capitol, 905 F. Supp. 2d 88, 92 (D.D.C. 2012); accord Howard v. Office of Chief Admin. Officer of U.S. House of Representatives, 720 F.3d 939, 947–48 (D.C. Cir. 2013) (assuming that that Title VII precedent applies to CAA claims); Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d 699, 706 (D.C. Cir. 2009) (same); Gordon v. Office of the Architect of the Capitol, 928 F. Supp. 2d 196, 206–07 (D.D.C. 2013) (applying judicial interpretations of Title VII to CAA claims of retaliation and discrimination without a discussion of what other standard might apply); Moran v. U.S. Capitol Police Bd., 887 F. Supp. 2d 23, 30–31 (D.D.C. 2012) (same).

4

Arms, 520 F.3d 490, 493 (D.C. Cir. 2008).  An "adverse employer action" for purposes of discrimination is one which results in "'materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment such that a reasonable trier of fact could find objectively tangible harm.'"  Newton v. Office of Architect of the Capitol, 839 F. Supp. 2d 112, 115–16 (D.D.C. 2012) (quoting Nurriddin v. Bolden, 674 F. Supp. 2d 64, 89 (D.D.C. 2009)).  Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action.  Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)).  If an employer asserts a legitimate, non-discriminatory reason, the question then becomes whether the plaintiff has offered sufficient evidence for a reasonable jury to infer that the employer's asserted reason was not the actual reason for the action.  See Brady, 520 F.3d at 494.

To prove her retaliation claims, Swann must establish that she engaged in statutorily protected activity; the OAC took a materially adverse action; and the OAC took the action because she opposed an unlawful practice.  McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012); Newton, 839 F. Supp. 2d at 115.  A materially adverse action for the purposes of retaliation "is one that could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination."  Newton, 839 F. Supp. 2d at 116.  The same burden-shifting framework applies.  Guajacq v. EDF, Inc., 601 F.3d 565, 577 (D.C. Cir. 2010).  The Supreme Court has instructed that the universe of cognizable retaliatory actions is broader than that of discriminatory actions, as a reasonable worker could be discouraged from reporting abuse by actions than might not themselves be considered abusive.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 70–71 (2006).  At the same time, the Supreme Court has cautioned

that retaliation actions should not be a means to micromanage supervisor decisions or sanction trivial harms.  Id. at 67–78.

Swann's hostile work environment claim, whether based on discrimination or retaliation, requires its own unique proof.  A hostile work environment is one that subjects an employee to "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008).  The work environment must be such that a reasonable employee would find it hostile or abusive, and the employee must have actually perceived it to be so.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993).  Courts look to the severity, frequency, and threatening nature of the acts; isolated acts generally are not actionable as a hostile work environment.  George, 407 F.3d at 416.

### III.   Analysis

#### A.   Method of Analysis

As noted above, Swann's Complaint contains 22 counts of gender-based discrimination and retaliation.  These counts stem from seven workplace incidents or actions taken by the OAC.  As to certain counts, the OAC moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and, in the alternative, for summary judgment under Rule 56.  As to other counts, the OAC moves for summary judgment only.  The OAC has submitted a number of declarations and other extrinsic evidence to support its motion.  Swann has responded to the OAC's evidence by submitting her own declaration, which amplifies the allegations in her Complaint.  The Court will approach the OAC's motion and the extrinsic evidence in the following manner:  It will first determine whether the count in question alleges a claim upon which relief can be granted.  If it does not, the Court will grant the OAC's motion to

dismiss that count under Rule 12(b)(6) without considering the extrinsic evidence. If a particular count does state a valid and plausible claim, or the OAC has only moved for summary judgment on that count, the Court will treat the OAC's motion as one for summary judgment and consider the parties' extrinsic evidence.

No discovery has been ordered in this case. Generally in Title VII cases, if an employer has demonstrated a neutral, non-discriminatory reason for an employment action, the plaintiff is "'afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext' for unlawful discrimination." Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (quoting McDonnell Douglas, 411 U.S. at 804). In order to counter a motion for summary judgment, however, a plaintiff must describe a factual dispute that is material. See Anderson, 477 U.S. at 248. A party opposing a summary judgment motion on the basis that discovery is needed bears the burden of identifying the facts that would create a triable issue. Dunning v. Quander, 468 F. Supp. 2d 23, 28 n.5 (D.D.C. 2006), aff'd, 508 F.3d 8 (D.C. Cir. 2007) (denying a Rule 56(d) motion because the requested information was immaterial). If the requested discovery is not directed towards evidence that would create a genuine question of material fact, the Court may grant summary judgment despite the discovery request. U.S. ex rel. Folliard v. Gov't Acquisitions, Inc., No. 13-7049, 2014 WL 4251150 (D.C. Cir. Aug. 29, 2014); Harrison v. Office of the Architect of the Capitol, 281 F.R.D. 49, 51–52 (D.D.C. 2012) (denying a request for discovery because, among other reasons, plaintiff had not identified the proposed discovery with specificity or explained why it would likely change the court's determination). Swann has not filed a Rule 56(d) motion explaining why discovery is necessary in this case, although her counsel did request an opportunity to take discovery at the hearing on the OAC's motions. In the interests of fairness, the Court will assess whether Swann has adequately explained why she is

entitled to discovery on the counts it considers on summary judgment. The Court will group the counts according to each alleged incident.

  B.  Discrimination and Retaliation Claims

    i.  Bathing Suit Photo (Count 1)

Swann was interviewed in connection with the OIG investigation. She alleges that at the outset of the interview the OIG investigator showed her a photograph of herself wearing a bathing suit and asked her whether she was the woman in the photograph. Comp. ¶¶ 13–14. The Complaint further explains that Swann works as a part-time model and that she had posted the photograph on her Facebook page, which she uses to promote her modeling career. Id. ¶¶ 17, 22. Swann claims that the investigator did not have to use that particular photograph to identify her and that it had no connection with the subject matter of the investigation. Id. ¶¶ 21–23. Count 1 of the Complaint alleges that being shown the photograph constituted gender-based discrimination in violation of the CAA.

The OAC moves to dismiss and, in the alternative, for summary judgment. To support its summary judgment motion, the OAC has submitted the declaration of the OIG investigator who conducted Swann's interview. Swann has included a further description of the incident in her own declaration. The Court will not consider this extrinsic evidence, however, because it concludes that Count 1 fails to state a claim upon which relief can be granted. Showing Swann the photograph was almost certainly gratuitous and unnecessary for purposes of identification. It might also have been insulting. But Swann fails to allege how simply showing her the photograph, which she herself posted on the Internet, possibly could have resulted in "materially adverse consequences affecting the terms, conditions or privileges of [her] employment." Newton, 839 F. Supp. 2d at 115; accord Jones v. D.C. Dep't of Corr., 429 F.3d 276, 280 (D.C.

Cir. 2005) ("an isolated insult . . . does not constitute the sort of adverse action that can support a retaliation claim"); Forkkio v. Powell, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (finding that public humiliation or loss of reputation does not constitute an adverse employment action under Title VII); Stewart v. Evans, 275 F.3d 1126, 1136 (D.C. Cir. 2002) (same). The Court will therefore grant OAC's motion to dismiss Count 1.

### ii.  Deposition Statement (Count 2)

Swann's counsel took the deposition of OAC Superintendent William Weidemeyer as part of discovery in Swann I and Swann II. Compl. ¶ 26; Pl.'s Opp'n Summ. J. Ex. E, at 24. Swann alleges that during the course of the deposition Weidemeyer advised her that she would be discharged on the basis of OIG's interim investigation report, Compl. ¶ 27, which she characterizes as a threat to discharge her without the benefit of the OIG's final investigative findings. Compl. ¶ 59. Count 2 alleges that this supposed threat amounted to unlawful retaliation for having brought the Swann I and II cases. Compl. ¶¶ 59–62. The OAC moves to dismiss and alternatively for summary judgment.

The transcript of the Weidemeyer deposition reflects that Swann's counsel asked Weidemeyer whether he had reviewed the OIG's interim report. Pl.'s Opp'n Summ. J. Ex. E, Tr. at 27.[3] After Weidemeyer responded that he had, Swann's counsel asked "is anything going to be done about [it]?" Id. Counsel for the OAC objected to the question because it called for speculation and Swann's counsel moved on to another question without seeking a response. Id.

---

[3] Swann referenced Weidemeyer's deposition in her Complaint and attached a relevant excerpt from the transcript to her opposition to the OAC's motion. Compl. ¶¶ 59–60; Pl.'s Opp'n Summ. J. Ex. E. The Court may therefore consider the transcript without converting the OAC's motion to dismiss this claim into a motion for summary judgment. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider . . . any documents either attached to or incorporated in the complaint").

It is unclear from her Complaint whether Swann alleges that Weidemeyer threatened that she would be fired during this exchange on the record, or in another off-the-record conversation during the deposition. In either event, Count 2 fails to state a plausible retaliation claim.

If Swann contends the exchange took place on the record, her allegation is flatly contradicted by the excerpt of the transcript she provided to the Court, which demonstrates that Weidemeyer did not make the statement attributed to him in the Complaint. But even if Weidemeyer made the alleged statement off the record, the statement in context cannot plausibly be characterized as a "threat," let alone one that affected Swann's employment or would have discouraged a reasonable employee from engaging in protected activity. The alleged statement cannot be fairly construed as a threat because Swann's own counsel raised the issue by asking Weidemeyer whether anything would happen to her as a result of the OIG's interim report. To the extent Weidemeyer made the statement, he was simply responding to Swann's counsel. Moreover, Swann fails to describe how Weidemeyer's purported threat, as opposed to her actual termination soon thereafter, adversely affected her employment as required under Title VII. Guajacq v. EDF, Inc., 601 F.3d 565, 578 (D.C. Cir. 2010) (finding that a threatening statement does not constitute an adverse employment action for purposes of retaliation when there is a reasonable explanation for the statement and it would not dissuade a reasonable employee from engaging in a protected activity). The Court therefore will grant the OAC's motion to dismiss Count 2.

                iii.                Offensive Speech by Male Coworkers (Counts 5, 11, 17)

Swann alleges that, on one occasion, a number of her male co-workers made sexually explicit comments in her presence. Compl. ¶¶ 28–30. The comments related to condoms and other sexual "equipment." Id. She claims she complained to management about the comments,

and management ordered the employees to cease making them, but the comments resumed four days later. Compl. ¶¶ 32–34. Swann alleges that the comments were discriminatory (Count 5) and retaliatory (Counts 11 and 17). The OAC moves for summary judgment. In support of its motion, the OAC submitted the declaration of OAC Assistant Superintendent Daniel Murphy, who oversees the electrical workers at the HOB. Decl. of Daniel Murphy ¶ 1. According to Murphy, an investigation revealed that the initial comments were made in response to a question on "Family Feud," which the employees were watching in the break room. Id. ¶ 8. After Swann complained, the employees were instructed to stop. Id. When she complained that they had resumed making comments of a similar vein, management issued a follow-up reminder to all workers in the shop and gave one male employee verbal counseling. Id.

"An employer may be held liable for the harassment of one employee by a fellow employee . . . if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action." Curry v. District of Columbia, 195 F.3d 654, 660 (D.C. Cir. 2000), cert. denied, 530 U.S. 1215 (2000). The OAC contends that management responded promptly and appropriately to Swann's complaints. Swann does not contest the OAC's version of events. Discovery is not warranted because Swann has not identified or requested any evidence that might raise an inference that the OAC's response was not prompt or appropriate. The Court therefore concludes that no reasonable jury could find that the OAC responded inappropriately to Swann's complaints. See id. at 661 (holding that prompt admonishments that effectively ended the conduct were a reasonable response); Roof v. Howard Univ., 501 F. Supp. 2d 108, 115 (D.D.C. 2007) (same). The Court will grant the OAC's motion for summary judgment on Counts 5, 11 and 17.

iv.     Congressional Moves (Counts 7, 13, 19)

During the biennial changeover of offices that follows elections in the House of Representatives, which are referred to as "the moves," the workload of HOB electrical employees increases dramatically. In Counts 7, 13, and 19, Swann alleges that the OAC discriminated and retaliated against her by denying her an opportunity to work overtime hours during the moves following the November 2011 House elections. Compl. ¶ 40. As the OAC points out, however, there were no elections in November 2011. To the extent Swann is referring to the elections in November *2010*, OAC argues that her claim should be dismissed because she failed to pursue administrative remedies within 180 days of accrual of the claim. See 2 U.S.C. § 1402. Swann's counsel at the hearing conceded the OAC's exhaustion argument. The Court will therefore grant the OAC's motion to dismiss Counts 7, 13, and 19.

v.      Female Locker Room (Counts 6, 12, 18)

Swann next claims that the OAC discriminated and retaliated against her by failing to provide her a separate female locker room facility. The Court dismissed a similar claim in Swann I. See Status Hearing, Feb. 4, 2013, Nos. 09-cv-1586 and 11-cv-0419. This time around, Swann maintains that the HOB has undergone renovations since Swann I was filed and that the OAC should have included separate female locker room facilities in the renovation plans. Compl. ¶¶ 36–39. The OAC moves for summary judgment. It responds, again through Assistant Superintendent Murphy, that it reasonably accommodated Swann's concerns by placing a lock on the existing unisex locker room to provide privacy and that nearby male and female bathrooms provided another private changing option. Murphy Decl. ¶ 5. It adds that there was no space for separate locker rooms and that Swann knew about the lack of separate locker rooms when she took the job. Id. ¶¶ 5–6. Swann does not materially contest Murphy's declaration.

She complains, however, that she was only able to use the locker room after employees coming on and off shift had finished, and that she was uncomfortable changing in the room notwithstanding the existence of a lock.  See Pl.'s Decl. ¶¶ 39–53.  The Court finds that no reasonable jury could conclude that the reasons given for the OAC's decision not to construct a separate female locker room were a pretext for discrimination or retaliation against Swann.  And because Swann does not point to any discovery that might lead to facts raising an inference of pretext, and the Court sees none, it will deny Swann's discovery request and grant the OAC's motion for summary judgment on Counts 6, 12 and 18.

      vi.      Late Grace Period (Counts 8, 14, 20)

OAC employees must arrive at work by 7:30 am, and are generally provided a 7 1/2 minute grace period after which they are charged for leave.  Compl. ¶¶ 44–45.  Swann alleges that in January 2012, her supervisor denied her the benefit of the late arrival grace period, while male employees who arrived consistently late were not deprived of the grace period or charged for leave.  Compl. ¶¶ 46–47.  The OAC moves for summary judgment.  To support its motion, the OAC offers the declaration of Joseph Tull, the supervisor of the HOB electrical shop.  Tull states that he issued letters of counselling to Swann, as well as two male workers in the shop, due to their late arrivals, but that only Swann was denied the benefit of the grace period because her tardiness was much more frequent than that of any of her male colleagues.  Decl. of Joseph Tull ¶¶ 6–9.  The OAC also submits the declaration of David Miller, an HOB program analyst, who was asked to review late arrivals by workers in the electrical shop during 2011.  He states that Swann was late 18 times while none of the other electrical shop employees were late more than 5 times.  Decl. of David Miller ¶ 3.

In her own declaration and Statement of Facts submitted in response to OAC's summary judgment motion, Swann does not refute the representations and supporting data offered by the OAC to show that she arrived late to work much more often than her co-workers. She mainly contests whether the late grace period is reflected in a written policy. Statement of Facts ¶¶ 65, 67. But whether the policy was oral or written is immaterial to whether the OAC denied Swann the grace period because of her tardiness or as pretext for discrimination or retaliation. Swann fails to offer any evidence, or point to any discovery that would lead to evidence, upon which a reasonable jury could infer pretext. As a result, the Court will grant the OAC's motion for summary judgment on Counts 8, 14, and 20.

        vii.        Holiday Decorating (Counts 9, 15, 21)

Swann alleges that in 2011 the OAC discriminated and retaliated against her by requiring her to change out of uniform if she wanted to place Christmas decorations on the doors of the HOB electrical shop during the work day. Compl. ¶ 51. She claims that male employees who decorated for Christmas were not made to change, and that in prior years she had performed those tasks without changing into civilian clothes. Compl. ¶¶ 50, 52. The OAC moves to dismiss and, alternatively, for summary judgment, countering that the House and Capitol Buildings have a policy that employees not wear their uniforms while engaging in this activity. See Def.'s Statement of Material Facts ¶ 27. Swann does not describe any tangible harm that she experienced due to this civilian clothes policy, or how unequal enforcement of the policy would dissuade a reasonable employee from reporting CAA violations. The Court therefore need not consider the extrinsic evidence submitted by the OAC. Swann alleges only the type of petty slight that numerous courts in this district have found insufficient to support a Title VII claim. See Kline v. Berry, 404 F. App'x 505, 506 (D.C. Cir. 2010) (denial of a lunch break reschedule);

Stewart v. Evans, 275 F.3d 1126, 1135 (D.C. Cir. 2002) (denial of a temporary assignment); Taylor v. Mills, 892 F. Supp. 2d 124, 145 (D.D.C. 2012) (denial of travel requests). The Court will therefore dismiss Counts 9, 15, and 21.

      C.      Hostile Work Environment Claim (Count 22)

Swann alleges that the combination of the seven incidents or actions discussed above created a hostile work environment for her as a woman in violation of the CAA. Compl. ¶ 170. The OAC moves to dismiss. It contends that the alleged acts do not constitute gender discrimination in the first place and, even if they did, they lack the severity and pervasiveness required under the law to create a hostile work environment.

As the OAC points out, four of the actions described by Swann are work-related: Weidemeyer's purported deposition statement, denial of overtime during the "moves," termination of the grace period for late arrival, and application of the civilian clothes decorating policy. Courts in this district consistently have found that these sorts of employment-related actions are not sufficiently severe or offensive to support a hostile work environment claim. E.g., Wade v. District of Columbia, 780 F. Supp. 2d 1, 19 (D.D.C. 2012) (collecting cases); Bell v. Gonzales, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (holding that ordinary workplace decisions such as "exclusion from the informal chain of command, close monitoring of his work, missed opportunities for teaching, travel, and high-profile assignments" do not constitute an abusive work environment).

The remaining three alleged incidents—the bathing suit photo, the offensive coworker speech, and the lack of a female locker room—are likewise not threatening, severe, or pervasive, even drawing all inferences in favor of Swann. They are, rather, the type of isolated daily annoyances and "ordinary tribulations of the workplace" that courts in this district have held do

not give rise to a hostile work environment claim.  Franklin v. Potter, 600 F. Supp. 2d 38, 76 (D.D.C. 2009) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); accord Baloch, 550 F.3d at 1201 (declining to find a hostile work environment where an employee was subject to isolated disrespectful incidents and verbal altercations); Houston v. SecTek, Inc., 680 F. Supp. 2d 215, 224–25 (D.D.C. 2010), aff'd, 407 F. App'x 490 (D.C. Cir. 2011) (finding no hostile work environment based on sarcastic and belittling comments); Holmes-Martin v. Sebelius, 693 F. Supp. 2d 141, 164–67 (D.D.C. 2010) (finding no hostile work environment where a manager insinuated an employee was incompetent in front of others, excluded her from meetings, included unwarranted criticisms in a review, and imposed unrealistic deadlines).  The Court will therefore grant the OAC's motion to dismiss Count 22.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant in full the OAC's Motion to Dismiss or, in the Alternative, for Summary Judgment.  The Court will issue a separate Order consistent with this Opinion.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　CHRISTOPHER R. COOPER
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Date:   November 10, 2014